UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PHILLIP A. BOUYER and
DOROTHY HARDY,

      Plaintiffs,                                  Case No. 11-13130
                                                        Hon. Stephen J. Murphy, III
                                                        Magistrate Judge Mark A. Randon

vs.

DEUTSCHE BANK NATIONAL
TRUST, CO. WELLS FARGO HOME
MORTGAGE,a division of Wells Fargo
Bank, N.A., SHORE FINANCIAL
SERVICES, INC., d/b/a Shore Mortgage,
KELLER WILLIAMS REALTY, INC., d/b/a
Keller Williams Realty Detroit Market Center,
HOMESITE INSURANCE CORPORATION,
and HALL & HUNTER REALTORS,

      Defendants.
_____/

**REPORT AND RECOMMENDATION TO GRANT DEFENDANTS'
MOTIONS FOR SUMMARY JUDGMENT (DKT. NOS. 48 AND 49)**

This case involves a claim of housing discrimination, brought under the Fair Housing Act ("FHA"), 42 U.S.C. § 3601 et seq. Plaintiffs, Phillip Bouyer and Dorothy Hardy, allege that Deutsche Bank National Trust Company ("Deutsche Bank"), Wells Fargo Home Mortgage ("Wells Fargo") and Shore Financial Services, Inc.'s ("Shore Mortgage") (collectively "Defendants") rejected their purchase offers or denied them financing for a home in Detroit, Michigan because they are African-Americans and Bouyer is a disabled veteran. Defendants' motions for summary judgment are pending (Dkt. Nos. 48, 49).[1] Judge Stephen J. Murphy III referred the motions to this Magistrate Judge for a report and recommendation pursuant to 28

---

[1] Deutsche Bank and Wells Fargo move for summary judgment in a single motion.

U.S.C. § 636(b)(1)(B).

Plaintiffs did not respond to Defendants' motions. Plaintiffs' counsel did appear for the October 2, 2012 motion hearing, but did not oppose the motions.[2] This Magistrate Judge considers Defendants' unopposed motions for summary judgment on their merits and, for the reasons indicated below, **RECOMMENDS** that they be **GRANTED** and Plaintiffs' lawsuit dismissed with prejudice.

## I.  FACTS

### A. The Balmoral Property

In late 2008, armed with a $99,000 pre-approval letter from Shore Mortgage, Bouyer looked at a house on Balmoral Street, owned by Deutsche Bank, as trustee (the "Balmoral Property") (Dkt. No. 35, Am. Compl., ¶ 14). Bouyer made an offer to purchase the Balmoral Property for $99,000 on December 8, 2008.[3] The offer required Bouyer to apply for a mortgage within 5 days and obtain a "firm commitment" for a mortgage within 45 days. Bouyer says that Deutsche Bank "refused" his offer because he is African-American and a disabled veteran (*Id.* at ¶ 15; Dkt. No. 49-2 (Pl. Dep. P. 103)). In February of 2009, two months after Bouyer made his offer on the Balmoral Property, Deutsche Bank sold it to a third-party for $79,000 (Dkt. No. 49,

---

[2] During a sidebar, Plaintiffs' counsel gave this Magistrate Judge a note from her doctor. This Magistrate Judge assumes counsel offered the note to explain her failure to respond to Defendants' motions – but she did not request an adjournment of the hearing or more time to respond to the motions. She also said she wanted to withdraw from representing Plaintiffs for reasons unrelated to her condition. This Magistrate Judge advised counsel, on and off the record, that she needed to *immediately* file a motion to withdraw. But, more than three weeks have passed, and she has not done so.

[3] Co-Plaintiff Hardy, Bouyer's mother, was not involved in the offer to purchase or loan application for the Balmoral Property.

p. 3). Plaintiffs allege that the buyers were "a white couple" (Am, Compl. ¶ 16).

Deutsche Bank responds that there is no evidence that: (1) the offer for the Balmoral Property was actually submitted to Deutsche Bank or its agent; (2) Plaintiffs applied for financing to purchase the Balmoral Property; or (3) Plaintiffs had secured financing, or could otherwise have paid the $99,000 offer. Even if there was such evidence, Deutsche Bank argues that Plaintiffs' claims are barred by the FHA's two year statute of limitations.

**B. The Strathcona Property**

Plaintiffs next attempted to buy a Deutsche Bank owned house on Strathcona Street (the "Strathcona Property") (Am. Compl. ¶ 17). On March 2, 2009, Bouyer offered $100,000 for the Strathcona Property (Am. Compl. ¶¶ 23, 26). Deutsche Bank made a counter-offer of $125,000. Bouyer accepted the counter-offer and applied for financing with Shore Mortgage (Am. Compl. ¶¶ 27- 28).

Shore Mortgage required Bouyer to pay for an appraisal, and later notified him that "the total cost of the mortgage, including the purchase price, would be $178,503.57" (Am. Compl. ¶¶ 30, 37).[4] On May 13, 2009, Shore Mortgage denied Bouyer's loan request because: (1) he had "serious delinquencies in payments"; (2) his outstanding credit balances were too high relative to his credit limits; and (3) his housing/debt ratio exceeded FHA guidelines ( Dkt. No. 48, pp. 7-8 and Ex. 11).

Undeterred, on July 2, 2009, Bouyer and Hardy jointly submitted a loan application to Wells Fargo for the Strathcona Property (Am. Compl. ¶ 45; Dkt. No. 48-14 (Uniform Residential

---

[4] Shore Mortgage claims the additional loan amount was required, primarily, to cover necessary repairs and back taxes (Dkt. No. 48, pp. 6-7).

loan Application)).  As part of the application, Wells Fargo requested the appraisal from Shore Mortgage.  Plaintiffs claim that Shore Mortgage's delay in sending the appraisal to Wells Fargo resulted in Wells Fargo denying the loan.  However, Shore Mortgage transferred the appraisal to Wells Fargo on June 15, 2009 – two weeks before Plaintiffs submitted their joint loan application.

On August 5, 2009, Wells Fargo notified Plaintiffs that their loan request was denied due to "insufficient income for [the] amount of credit requested" and "excessive obligations in relation to income" (Dkt. 49-18 (Notice of Action Taken and Statement of Reasons)).  Plaintiffs allege that Deutsche Bank subsequently sold the Strathcona Property "to a white female for $65,000.00" (Pl. Compl. ¶ 56).  Plaintiffs filed this lawsuit on July 19, 2011 (Dkt. No. 1).

## II.  ANALYSIS

### A.  Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A moving party may meet this burden "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Revised Rule 56 expressly provides that:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

>> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). The revised Rule also explains the consequences of failing to properly support or address a fact:

>> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
>>
>> (1) give an opportunity to properly support or address the fact;
>>
>> (2) consider the fact undisputed for purposes of the motion;
>>
>> (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or
>>
>> (4) issue any other appropriate order.

Fed. R. Civ. P. 56(e). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

When the moving party has met its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industries Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Ultimately a district court must determine whether the record as a whole presents a genuine issue of material fact, *id.* at 587, drawing "all justifiable inferences in the light most favorable to the non-moving party," *Hager v. Pike County Bd. Of Education*, 286 F.3d 366, 370 (6th Cir. 2002).

Plaintiffs failed to respond to Defendants' motions for summary judgment. However, notwithstanding this lack of opposition, Defendants' legal arguments are well-taken, and Plaintiffs' claims should be dismissed for the reasons discussed below.

**B. Many of Plaintiffs' Claims are Barred by the FHA's Two-Year Statute of Limitations**

An FHA action must be filed within two years of the defendant's last infringing act. 42 U.S.C. § 3613(a)(1). Plaintiffs began this action on July 19, 2011. Therefore, Plaintiffs' FHA claims are not timely if they are based on actions that occurred more than two years before they filed suit.

### 1. *All of Plaintiffs' claims against Shore Mortgage are time-barred*

Shore Mortgage gave Bouyer a $99,000 pre-approval letter in December of 2008; notified him, in writing, that his loan request was denied on May 13, 2009 (Dkt. No. 48-11 (Notice of Action Taken)); and transferred the Strathcona Property appraisal to Wells Fargo on June 15, 2009 (Dkt. No. 48-2 (Aff. of Welty ¶ 20). Thus, Shore Mortgage's last allegedly infringing act occurred on June 15, 2009. Because Plaintiffs did not file suit until more than two years and one month later, their claims against Shore Mortgage should be dismissed with prejudice.

### 2. *Plaintiffs' claims against Deutsche Bank related to the Balmoral Property are time-barred*

Plaintiffs' housing discrimination claims against Deutsche Bank related to the Balmoral Property are similarly time-barred. Deutsche bank sold the Balmoral Property to a third-party in February of 2009.[5] Because Plaintiffs chose to wait until July of 2011 to file this lawsuit, their claims against Deutsche Bank related to the Balmoral Property are also barred by the FHA's two-year statute of limitations. 42 U.S.C. § 3613(a)(1).

---

[5] Bouyer testified that he believed he was discriminated against in February 2009, but explained that he waited more than two years to file suit because he was "more concerned" about finding another home to buy in the same neighborhood (Pl. Dep. 105-06).

**C. Plaintiffs have Failed to Establish a Prima Facie Case of Housing Discrimination For the Strathcona Property**

The FHA bars discrimination "against any person in the terms, conditions, or privileges of sale or rental of a dwelling ... because of race ... [and handicap]." 42 U.S.C. § 3604(b) and (f). Discriminatory housing practices in violation of the FHA may be brought under three theories: "(1) intentional discrimination claims (also called disparate treatment claims); (2) disparate impact claims; and (3) claims that the [defendants] failed to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford [handicapped] person[s][an] equal opportunity to use and enjoy a dwelling." *Lapid-Laurel, L.L.C. v. Zoning Bd. of Adjustment of the Township of Scotch Plains*, 284 F.3d 442, 448 n. 3 (3d Cir. 2002) (citations omitted). Plaintiffs are proceeding under the first and third theories.

Plaintiffs have not offered any direct evidence of intentional race or disability discrimination. Therefore, to prevail, they must first establish, through circumstantial evidence, a prima facie case of intentional housing discrimination.

The Sixth Circuit has adopted a slightly different formulation of the *McDonnell Douglas* burden-shifting test for housing discrimination claims. *Mencer v. Princeton Sq. Apartments,* 228 F.3d 631, 634 (6th Cir.2000) (noting "[c]ourts have adapted [the *McDonnell Douglas*] test to fair housing claims by requiring the plaintiff to first establish a prima facie case of discrimination"). Therefore, to establish a prima facie case, Plaintiffs must show that: (1) they are members of a protected class; (2) they applied for and were qualified to purchase certain property or housing; (3) they were rejected; and (4) the housing remained available thereafter. *Id*. at 634-35. With respect to the Strathcona Property, Plaintiffs cannot meet the second prong of the test (i.e., that

7

they were qualified to purchase the property).

Wells Fargo denied Plaintiffs' loan request due to excessive debt obligations in relation to Plaintiffs' income and because their housing/debt ratio exceeded FHA guidelines. After denying Plaintiffs' loan, Wells Fargo conducted a second level review, which confirmed the reasons the loan was denied (despite an earlier pre-approval). This review indicated that: (1) the taxes on the Strathcona Property were high (nearly $20,000 per year) (Dkt. No. 39, Ex. 14); Plaintiffs had a credit problem (excessive obligations in relation to income); and Plaintiffs had a capacity problem (insufficient income for the loan requested) (Dkt. No. 49-13 (Second Level review Summary)).

According to Wells Fargo, Plaintiffs' income consisted exclusively of social security and VA benefits; Bouyer's credit report also reflected serious delinquencies, many credit inquiries, and an unfavorable proportion of credit balances relative to his credit limits (Dkt. No. 49-17 (credit report)). Given these facts, Plaintiffs have failed to establish a prima facie case of housing discrimination on the basis of their race or Bouyer's disability, because they were not qualified to purchase the Strathcona Property. *See, for example, Union Planters Bank of Southeast Missouri*, 289 F.3d 533 (8th Cir. 2002) (plaintiff did not establish that she was qualified for a loan necessary to purchase the property).

Finally, as it relates to Plaintiffs allegation that "Defendants committed unlawful discrimination by applying different terms, conditions or privileges in the sale of properties to Plaintiff Bouyer because of his disability [under 42 U.S.C. 3604(f)(2)]," there is, likewise, no evidence of differential treatment due to Bouyer's disability. And, under the FHA, "[an] [e]conomic accommodation is not 'necessary' to afford a disabled person access to equal housing

opportunity when the accommodation sought does not directly ameliorate an effect of the disability." *Sutton v. Freedom Square Ltd.*, 2008 WL 4601372 *4 (E.D. Mich. Oct. 15, 2008) *aff'd sub nom*. *Sutton v. Piper*, 344 F. App'x 101 (6th Cir. 2009). Stated simply, because Plaintiffs cannot show they could have borrowed the money to buy the Strathcona Property, their claims of discrimination ring hollow and should be dismissed.

### III. CONCLUSION

For the foregoing reasons, **IT IS RECOMMENDED** that Defendants' motions for summary judgment (Dkt. Nos. 48, 49) be **GRANTED** and that this case be dismissed with prejudice.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length

unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

s/Mark A. Randon
MARK A. RANDON
UNITED STATES MAGISTRATE JUDGE

Dated: November 5, 2012

### Certificate of Service

*I hereby certify that a copy of the foregoing document was served on the parties of record on this date, November 5, 2012, by electronic and/or first class U.S. mail.*

*s/Melody R. Miles*
*Case Manager to Magistrate Judge Mark A. Randon*
(313) 234-5540